May it please the Court, my name is Jay Osiyovitch, and I am here on behalf of Barry Whitaker. While I have raised three points in my brief, I intend to focus my argument this morning on the February 3rd, 2017, traffic stop, which resulted in the seizure of a contraband and a handgun. We respectfully request that you vacate the judgment and remand the case to the district court with instructions to grant Mr. Whitaker's suppression motion on the grounds that the police lacked probable cause to stop the vehicle and that the evidence seized was thus the fruit of the poisonous tree. The underlying This argument was not raised below. Is that correct? We raised the question as to whether or not there was a violation of the law observed by the police. This particular theory was not presented to the district court. Yes. What was argued in the district court was effectively a factual argument that the police officers did not see what they say they saw. Correct, Your Honor. Yes. But your argument has to do with whether there was, in fact, under New York statutory law, a traffic violation. Correct, Your Honor. Assuming that the officers saw what the district court found that they saw. Yes, Your Honor. So we have to consider your argument under the plain-error standard, right? I believe that this would still fall under a de novo review because there is the question as to whether or not there was a violation of the law, and that was presented. If you were to review or decide that we are incorrect in your reviewing under the plain-error standard, we believe that we still are sufficient. The plain-error standard is designed so that one can't essentially, that the district court should be given the opportunity, the district court should have had the opportunity to correct errors. And if you never gave the district court the opportunity to correct the error so as to bring the ship home safely, essentially, then you have to persuade the higher court that this was a plain error that even without being raised should have been observed by the court. Yes, Your Honor. And we believe that if the court looked at the statute in its entirety rather than just rely on the officer's interpretation of the law — If the court looked at the statute, the statute says exactly what the statute says expressly, that you have to signal for 100 feet before making the right turn. Section B of 1163 does say that. But if you read 1163 in its entirety, looking at subsections A, B, and D, it would — as the city court did in Brant, it addresses what a vehicle should do when it is stopped at a traffic signal. Why do you say that, actually? It seems to me on reading D that — other than — I say, why do you say that other than the fact that the Poughkeepsie — a judge of the Poughkeepsie City Court once interpreted it your way. But subsection D doesn't say that this is an exception to the rule in B. It seems to be indicating an additional circumstance in which one is required to use a turn signal. Well, the court was looking at the question of what a vehicle stopped or parked should be doing and viewing a stopped vehicle in the same sense as being parked. We know that courts that have looked at this statute have made exceptions to the rules, even in Tamburini, which the government relies on to say that the court reached the proper conclusion in this case. But that was — but that was a situation in which it was effectively impossible to comply with the 100-foot rule without actually giving the misleading impression that the driver was going to turn at a different corner than he intended to turn at. But the question becomes whether or not there are — there does become exceptions or there are alternative ways of — But why would there be — why would you interpret D at all to be an exception to B? B says give the driver behind you notice in — 100 feet in advance, effectively, that you're going to turn. Why is there an exception because you are at a stop sign or a traffic light? Well, the question is whether or not there is an exception, as we address in our reply brief, really should be a question for the New York Court of Appeals. But — Wait, wait, wait, wait. Why on earth would that be? We certify things to the New York Court of Appeals when we are unable to predict how the New York Court of Appeals would decide a question of State law. But it seems to me you have two problems here. One is, at least as I read the statute, I would think that the Poughkeepsie City Court got it wrong, even if I had de novo review for the reasons I've essentially just asked you about. But in addition to that, there's a plain error standard here. So if it is a question that is so uncertain that we would need to trouble the New York Court of Appeals about it, why would we find that the district judge obviously should have interpreted it in a particular way? I think because a plain reading of the statute would have — they would have reached this conclusion just as the Poughkeepsie court did, Your Honor. And that — But in other words, because your client complied with D as you read D, then he is exempted from having failed to comply with B. Correct, Your Honor. That he gave proper notice to the drivers behind him of his intention to signal, which is the whole purpose of the statute, to allow other drivers to know what you were going to do on the road and not be surprised by your movements. And this also requires you to interpret the term parked position to include stopping for a red light. Yes, Your Honor. And that's because you think that literally the definition of park, which everyone in driver's ed, at least when I took it, was told has to do with the difference between parking, standing, and stopping for purposes of complying with no parking signs and the like, parking regulations. Actually, because the definition of park in — taken literally includes a vehicle standing who is not engaged in loading or unloading merchandise or passengers, someone who is at a red light, stopped for a red light, is parked. For the purpose of not being in continuous movement. Correct, Your Honor. Yes. And so the whole purpose is to give the notice to the driver behind him, which Mr. Whitaker had done. And the law does seem to allow for that. We can — Has there ever been a circumstance in which anyone has ever described a car that stops at a red light as parked? Well, we do have — A red light or a stop sign? Does anybody ever say, oh, yes, I parked, I came to the red light and I parked? I've never heard that said. No, Your Honor. But we do have within Brandt the idea that the stopped vehicle is in the same position, you know, definitionally, as a car that is parked. Is it in the same position? Well, it's in the — Ordinarily, people don't park in the middle of the driving lane. Ordinarily, they park at the curb or at the edge of the roadway. They don't park right in the middle of where people drive. No, but the vehicle is not in active movement at that time. And the idea is to ensure that the driver behind them has proper notice of what the driver is going to do. We see analogously in other — You have a very decent argument that the regulation of signaling 100 feet in advance doesn't make an awful lot of sense where one is coming to a stop sign and will have to stop. But that's a very different thing from saying that there's anything in the rule that compels the conclusion that you don't have to do it. And this is why I think the question — So take me through it. Take us through it. Take us through the words of the rule that tell that you're not — that you're not required to signal. What are the words of the rule? Read the provisions of the rule. This is our reliance on Brandt, and that the vehicle, as it's stopping at the traffic control device and giving proper notice to the driver behind, is sufficient under the rule. And we see from Tamburino that exceptions can then apply, such as the idea that it was impossible to comply 100 feet before because there may be confusion to the driver behind so that another signal could take place. We see analogously in — I don't want to put words in your mouth, but I think your response to Judge LaValle is — requires you to go into the language. And your language argument — let me try to state it and see if I have accurately what you are arguing — is that D requires the use of a signal when you start from a parked position. Yes, Your Honor. And that in a separate section, Vehicle and Traffic Law 129, park or parking — which maybe includes being in a parked position — means the standing of a vehicle, whether occupied or not, otherwise than temporarily, for the purpose of and while actually engaged in loading or unloading merchandise or passengers. So you are maintaining that technically, under the law, a car that is stopped for a standing, otherwise than, meaning it is not, temporarily engaged in unloading passengers or merchandise. Yes, Your Honor. And therefore, is parked, and therefore, is in a parked position, and therefore, is required by subsection D to signal. But I'm still puzzled as to why that means that if there is another regulation that requires a signal to happen even earlier than that, that this additional requirement, sort of belt and suspenders thing, exempts you from the requirement of signaling 100 feet in advance. Because the vehicle, as the Court in Bryant points out, the vehicle is in the — is in a parked position on the roadway, and from that point, given that they are — were required to stop, it is appropriate then to signal. Well, he's not given — being given a ticket for signaling. He's being given a ticket for not having signaled 100 feet earlier. Correct, Your Honor. Okay. Now, as I — as I was — before your question, as I was trying to address, we do see  that it becomes — a question has arisen in some of those States, this goes back a number of years, whether or not it's required for a vehicle to use a stop signal, brake lights, hand signals, that they intend to stop when there is — the State directs them to do so via a stop sign or a traffic light. And we see law — we see case law out of Texas. We see case law out of Washington and a few other States informing us that because the State has mandated this at this time, it is appropriate, it is okay for the driver not to have signaled their intention to stop. So we see that exceptions do exist in how these laws get interpreted in the use of signaling. Are those — I'm just curious of how many stop signs appear on the head of a pin, is that if this had been raised in the district court, the district court, the parties could have explored with the officers what they really thought the law was and why, as a — why, in this nuanced discussion, they decided to issue a ticket and determine whether it was in good faith. Though we don't have the benefit of any of that, and I think, as Judge Lynch indicated, the fact that we might have to go to the New York Court of Appeals and obtain their wisdom on what — on how to parse these statutes and regulations means that it can't be plain error. So you want to address that? Well, then, Your Honor, actually, though we — I have not asked for this type of relief, I would recommend that maybe that you send this back for further fact-finding by the district court, and allow the district court then to examine this argument and address this issue. Fact-finding? Well, the question of law, excuse me. Not a factual finding, but to address this question of law, and if — Even if the law is as you say it is, there's confusion around it, and we don't know, on this record, whether the officer thought in good faith that — no, they didn't — I mean, they thought the law was the way I was enforcing it that time, and you're without an argument, it seems. Well, that would be one of the reasons why I think the New York Court of Appeals should actually address this, because the New York Court of Appeals would be in a better position to know whether this would be a reasonable mistake for an officer to have made, or whether it was actually an unreasonable decision that the officer made. Would the New York Court of Appeals have any other materials than the ones that we have for deciding that, which is to say the face of the statute and the Poughkeepsie City Court decision, and the other decision that you referred to about not signaling when you're going to cross — if you complied, you would be crossing another road first? That's the universe of law. Correct, Your Honor. Except for these out-of-state decisions, which — are they cited anywhere in your briefs? I did not cite them, no. So we don't — you just say there are those things. I don't doubt your wisdom, but if we needed to find them, we'd have to go hunting through. I can provide those. Well, but also, you have represented, I think, if I understood you correctly, that these are not about statutes requiring turns, but are about statutes requiring that you either, by stepping on the brake and thus lighting a brake light, are going to stop, or by using a hand signal, indicate your intention to stop, that that is not required when you are legally required to stop. Because, at least in Texas, they seem to assume that people will comply with the red light and that all the other drivers will expect that and don't need to have any indication that the person is going to stop. Correct, Your Honor. Thank you, Mr. Ossoff. But you've reserved two minutes for rebuttal. Ms. Lee. Good morning, Your Honors. May it please the Court. My name is Tiffany Lee, and I represent the United States. I first wanted to quickly thank both the Court and Mr. Ossoff for being so accommodating with my request that this matter be calendared first, and my kids thank you as well. This Court should affirm the District Court's decision denying Mr. Whitaker's motions to suppress the evidence obtained as a result of the traffic stop on February 3, 2017. As Your Honors have noted, this whole discussion just reveals that the whole issue as to how to interpret Vehicle and Traffic Law 1163B, it's not plain, it is far from plain error, if there were error to begin with. The clear language of the statute, which has been around New York State for a very, very long time, indeed 1163D, upon which Mr. Ovsjavic relies on, that was enacted in 1964. And so this statute has been around for a long time, and in its history, despite the fact that Mr. Ovsjavic has raised that in, I believe, 2018, New York City experienced, had like over 17,000 traffic violations issued as a result of failure to signal, there have only been two real, I guess, discussions on it at the city court level as to how to interpret 1163B. The plain language of the statute states that a driver who is going to turn needs to make the signal within 100 feet. So what do you say in answer to your adversary's argument that that is nullified by D? It is not nullified by D. Not nullified by D in the circumstance where the person comes to a stop sign. Correct. Correct. Exactly. It is not nullified by D. Why is that? And it's because D doesn't say anything about a car in a stationary position. It doesn't say anything that the Brandt court found, which I believe... I just read from section 129 that arguably the word parked could include a vehicle that comes to a stop at a stop sign. I think parked has a... based on the definition in 1129, though... If that is the case, if parked does cover a vehicle that stopped at a stop sign, D says that the signals provided in section 1164, which encompasses, I think, the ones provided in 1163, shall be used in certain circumstances, but not be flashed on a parked or disabled vehicle. I don't believe that the definition found for parked covers a car that's approached and stopped at a stop sign. Because you're not in the same instance where you're unloading or loading passengers. Why do you need to even get that far? Isn't the better argument for you that D does not create an exception? Correct. It says this is an additional circumstance when you're supposed to use a turn signal. And I probably agree with you also on the other argument that the clearest meaning of that is that if you are parked by the side of the road, well, let's put you on the right side of the road, you're parked by the side of the road and now you're going to pull out into traffic, you are going from a parked position and therefore are required to signal. Correct. Right. But even if it does apply as an additional reason to signal when you are at a stop sign, nothing in D makes an exception to B. It just says this is another time when you have to signal. So if you didn't comply with B, nothing in D says if you comply with this rule, you don't have to do it 100 feet in advance. Exactly. It's not an exception. What about the second clause? Of D, it goes on to say and not be flashed on one side only on a parked or disabled vehicle. Right, exactly. That section does create a time when you're not supposed to signal. You're not supposed to, as some people do, if you are disabled or parked. And this is interesting, too. It says you are not supposed to flash on one side when you are parked, which certainly seems peculiar in light of the prior thing. But put that to one side. You're not supposed to, like, pull up next to a parked car and flash your right-hand signal to indicate that you are stopped or disabled. That's not something you're supposed to do. And you're not supposed to flash your turn signals to tell the guy behind you to pass or as some kind of courtesy. That is verboten. You could get a ticket for doing that. Correct. That's when you're not supposed to signal. You are supposed to signal in the other conditions, like changing lanes or to indicate an intention to turn. Correct. And even Mr. Osiyovitch is not arguing that the fact that D says you are supposed to signal an intention to turn somehow exempts you from the requirement of B that says when you're going to turn, you should signal 100 feet in advance. So D duplicates B in a variety of ways and overlaps B in a variety of ways. Correct. And actually — Plaintiff's counsel, I thought that — I'm sorry, the defendant's counsel was relying not on the first clause of D but on the second clause of D that says that the signals provided for in 1164, which encompasses the signals required in 1163, shall not be given on one side only, which is what B requires, signaling on the side to which you're going to turn on a parked vehicle. No. I do not read that to be the case, but in any event, because — It's not on a parked — on one side only on a parked vehicle or disabled vehicle. So if you have a car that's — you cannot get off the road, you're not going to signal an intentionality of a — that you're able to go someplace when you're basically stuck in the road. Of course. I mean, this depends on whether the definition of parked in 129 can apply to the kind of vehicle we're talking about that has come to a stop at a stop sign before turning. So why doesn't the second clause of D say that that signal shall not be given at a — at a — at a parked vehicle, which would, of course, put it in conflict with the — with the requirement that you signal the turn that you're going to make at the time that you stop? I don't think it puts it in conflict. I think you — I think any time you're approaching a stop sign, you have to signal your turn within 100 feet, period. And then if you're at the stop sign and you're about to make the turn, your signal is on. I mean, you have to make the signal of intentionality that you're either turning right or left. And basically, B states that any person who's about to make any turn needs to flash on their signal within the 100 feet. And am I right that Mr. Whitaker did turn on his signal at the — I forget whether it was a stop sign or a traffic light, but did not do so 100 feet in advance? Correct. And that's why he got a ticket. That's correct. But if — so Mr. Osiyovitch, I agree with you, is not relying on that second clause as to when he should not signal, because if that were the proper reading of that, then Mr. Whitaker committed a different violation because he did turn on his signal  He did signal once he got on the stop — correct, if he was parked. Yeah, I thought the language that Mr. Osiyovitch is relying on is that the signals shall be used to indicate — the grammar isn't very good here — a start from a parked position. Correct. Or to indicate there's no a. To indicate start from a parked position. Correct. That's the way I interpreted — Oh, unless it's an intention to — I see, it's an intention. They shall be — I absolved them of the grammatical problem. Shall be used to indicate an intention to start from a parked position. Correct. Okay. Well, I think the plainest thing about this is that the meaning is not plain. I think the — exactly. The meaning advocated by Whitaker is not plain. Oh, the meaning advocated is not — the error here is — if there were error, is not plain. And then as to the whole idea of certifying to the New York State Court of Appeals, again, as I mentioned, there's only less than five cases talking about 1163 in this — kind of curtailing this context, all at the city court level. It has not been developed. And as I mentioned — Isn't there like one going one way and one going the other way of the city court cases? At the city court, yes. Tamburino, which is the one the government relies on, basically states that, in essence, 1163d does not absolve you of your obligation under 1163b, even though in that circumstance, factually, it was very — it would have been — it would have meant that the individual there who is going through a bunch of intersections would have conveyed a signal that he could have been turning at any one, and he only flashed on his signals as soon as he came to the stop sign. But that court said it doesn't matter that he would have, like, practically, common-sense-wise, would have given the wrong meaning to either the driver behind or the driver in front. The reality is that he still is not absolved of flashing on the signal. And to clarify the state of the record, am I right that the police officers did testify as to their understanding of the law? That is to say, they testified that they gave the man a ticket because they understood that he was supposed to signal in compliance with b 100 feet in advance, and he did not. They were not asked by anyone about whether they — how they interpreted d, because that wasn't raised. But they certainly did say what their understanding of the law was. Exactly. And the precise issue, as framed below by counsel below, was the issue is not whether or not he committed this infraction. The issue is whether or not the officers could credibly have observed the violation. So it all stems on whether or not the officers were able to see — Basically, it was a standard credibility argument. They said he didn't comply technically, and that gave them the pretext — and I think there's no doubt that they were interested in stopping him for another reason — to stop him. Which is perfectly lawful. And the defendant said, no, that can't be true because of where the cars were positioned or the state of the lighting or whatever else was the relevant circumstances at the time, and therefore challenged the credibility of the officer's statement that he did not signal 100 feet in advance. Correct, Your Honor. I see I'm out of time. The government respectfully requests that the judgment and conviction be affirmed. Unless there are any further questions, the government rests. No. Let me just observe for the parties. And as I read it, there is an argument regarding sentencing. And as Mr. Osiyovitch gave us a letter, a helpful letter, thank you very much, that sort of indicates a cue. And so when a decision comes down, we may ask you for supplemental letter briefing depending upon what that decision is. So — Understood. Stand by. Will do. Thank you. Thank you very much. Just a few brief comments. To address one of the points, actually, there was no ticket issued for the underlying basis of the traffic stop. As often happens when the police are actually interested in something else. Correct. But that doesn't affect whether it's a legal stop or not. Right. No. We're not making an argument along those lines. Just to point out for the record that there was no ticket issued. Interestingly, the officer who initiated the traffic stop, I believe it was Officer Zelko, who was directly behind the vehicle, he never testified that he observed this particular violation. It was Officer Raymond whose vehicle was behind the SUV driven by Officer Zelko who claims to have observed the stop. But that was all before the district court and — Yeah. Correct, Your Honor. — facts were found, right? Yes. Correct, Your Honor. Just to clarify what this was about, in part of the government's plain-error argument, alternatively, as I addressed in my main argument, is that you could send this back to the district court to fully address this legal question as to whether or not there was actually a violation of the law. And that may be the appropriate way. Why would we do that? Because there is the question as to was there an actual violation of the law, and give the district court the opportunity to weigh in on the matter if this panel feels that it's problematic. It seems to me that you have not provided any answer to Judge Lynch's — Judge Lynch's reading of D is that all D does is impose an additional requirement here for signaling, that it doesn't — that by doing that and that the second half of it simply doesn't apply to the 100 feet, it talks about a vehicle that is parked. And even if — even if that encompasses a vehicle stopped at a stop sign, it doesn't relate to what happens in the 100 feet preceding. Because, again, it's based on the ability to — the common sense of what this statute is about to give the driver behind you the fair opportunity to know what actions you are going to be taking on the road, and that this should provide the clear opportunity for doing so. Thank you. Thank you, Your Honor. Thank you both. We'll reserve decision in this case.